D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**FRANCESCA LAWRENCE,**

          **Plaintiff,**

      **v.**

**PENSKE MEDIA CORPORATION,**

          **Defendant.**
-------------------------------------------------------------x

**INDEX No.:**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Francesca Lawrence alleges as follows:

1.      Plaintiff Francesca Lawrence ("Ms. Lawrence" or "Plaintiff") currently works for Defendant Penske Media Corporation ("PMC" of "Defendant") as an Associate Director in the International Markets Division. Since Ms. Lawrence began her employment with Defendant three years ago, she has consistently exceeded her work performance expectations and was being groomed for a promotion into a more senior business development role. However, after Ms. Lawrence complained about being sexually harassed by her direct supervisor and boss, Defendant retaliated against her. Not only has Defendant refused to promote Ms. Lawrence, but they are now actively pushing her out of the company and in the process of replacing her. Defendant's actions are unethical, retaliatory, and illegal.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action against Defendant alleging discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 269; the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 194, 740.

3.      This Court has original diversity jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

5.      Defendant Penske Media Corporation ("PMC" of "Defendant") is a media holding company owns and operates dozens of media brands and publications. PMC is incorporated in the state of Delaware and has its headquarters and principal place of business in California.

6.      Plaintiff Francesca Lawrence ("Ms. Lawrence" or "Plaintiff") is a current employee of Defendant. Ms. Lawrence began working for Defendant in February 2021 as the Associate Director, Brand and Partnership Operations, International Markets. Throughout her employment with PMC, Ms. Lawrence has worked in Defendant's New York City offices. Ms. Lawrence is a resident and citizen of New York State. She is 32 years old.

## FACTS

7.      Defendant Penske Media Corporation ("PMC" of "Defendant") is a media holding company owns and operates dozens of media brands and publications, including Rolling Stone, Billboard and Variety.

8.      Plaintiff Francesca Lawrence ("Ms. Lawrence" or "Plaintiff") began working for Defendant in March 2021 as the Associate Director, Brand and Partnership Operations, International Markets. In this role Ms. Lawrence is responsible for, among other things, the day-to-day operations regarding PMC's international partners/licensees across multiple brands and markets. Ms. Lawrence is fluent in Spanish and runs point with the Latin American partners.

9.      Ms. Lawrence directly reports to Debashish Ghosh ("Mr. Ghosh") who is the Managing Director, Brand and Partnership Operations, International Markets. Mr. Ghosh is a 65-year-old man who lives and works in Mumbai, India.

10.     Ms. Lawrence works alongside Ms. Gurjeet Chima ("Ms. Chima") Vice President, International Markets.

11.     At the beginning of November 2023, Ms. Lawrence participated in an important summit in New York City focusing on the Rolling Stone brand.

12.     After the summit, on November 2, 2023, all members of Ms. Lawrence's team attended an off-site dinner at the Lamb's Club in New York City.

13.     Mr. Ghosh, the leader of the team, arrived late to the dinner and was visibly intoxicated.

14.     Mr. Ghosh proceeded to have many drinks of alcohol – whisky straight – over the course of the dinner and continuing afterwards.

15.     During the dinner, Mr. Ghosh made a number of disparaging and sexist comments about Ms. Lawrence's physical appearance.

16.     For example, Mr. Ghosh, commenting on Ms. Lawrence's body, told her that "my best advice for you" was "to get up tomorrow morning and a run a 5k because I can tell that you

haven't been exercising." Directly after this comment, Mr. Ghosh laughed in Ms. Lawrence's face while Ms. Chima, also laughing, tried to cover for him by saying "that's not what he means."

17.     Mr. Ghosh and Ms. Chima went on to tell her that she "slouched" too much and wasn't "confident" in how she presented herself.

18.     This wasn't the first time Ms. Lawrence experienced Mr. Ghosh's intoxicated, inappropriate comments. In an earlier incident on a trip to Mexico in 2022, Mr. Ghosh told Ms. Lawrence that she "didn't take care of herself" and that she "needed to love herself."

19.     Ms. Lawrence was appalled by Mr. Ghosh's comments, and Ms. Chima's reaction, because they were plainly personal and sexist attacks on her and had nothing to do with her work.

20.     The night continued and Mr. Ghosh grew increasingly drunk, to the point where he was unable to walk straight.

21.     Mr. Ghosh insisted on sitting next to Ms. Lawrence where he invaded her physical space and forcible hugging Ms. Lawrence against her will. He pushed her head onto his shoulder and put his hand on her neck and lower back, rubbing slowly.

22.     Mr. Ghosh whispered into Ms. Lawrence's ear that she was like "his daughter" and that he felt like "her father."

23.     Mr. Ghosh then put his hand on Ms. Lawrence's knee and began rubbing it slowly.

24.     Ms. Lawrence did not want to be touched and tried to maneuver away from him, but he was her boss and he insisted on the unwanted physical contact.

25.     Ms. Lawrence eventually got up to use the restroom to stop the unwanted touching, but upon her return, Mr. Ghosh maintained his close physical proximity to her, refusing to return to his own chair outside of the booth and requesting for the other junior colleague, Ms. Wagner, to switch spots with Ms. Chima.

26.     Mr. Ghosh kept ordering drinks and when Ms. Lawrence and Ms. Wagner did not seem to be having fun, Mr. Ghosh admonished them for not "drinking as much" as he was.

27.     Mr. Ghosh continued to say demeaning and sexist remarks to Ms. Lawrence. At one point Mr. Ghosh gestured towards Ms. Lawrence's chest and physically pointed at her breasts.

28.     Mr. Ghosh stabbed his finger toward Ms. Lawrence and prodded her breasts multiple times. Ms. Lawrence did not want to be touched on her breasts by her boss. This was humiliating for her.

29.     Mr. Ghosh's actions were so outrageous that Ms. Chima intervened and grabbed Mr. Ghosh's hands to prevent him from touching Ms. Lawrence's breasts again. Ms. Chima told Mr. Ghosh, in a mocking tone, that he needed to stop because this "was gonna be an HR violation."

30.     Mr. Ghosh's actions humiliated and degraded Ms. Lawrence and constitute sexual harassment.

31.     At a business lunch the next day, Mr. Ghosh told the entire team that he had no recollection of the night before, implying that had drunk so much alcohol that he had blacked out.

32.     On November 8, 2023, Ms. Lawrence complained about Mr. Ghosh's action to Defendant's Human Resources department, specifically complaining that she believed Mr. Ghosh sexually harassed her.

33.     Ms. Lawrence complained because she believed that Defendant would seek to remedy the situation and curtail Mr. Ghosh's behavior towards her. Ms. Lawrence was hopeful that Defendant would do the right thing and that her working conditions would improve.

34.     However, Defendant did nothing to protect Ms. Lawrence, but instead retaliated against her for complaining about being sexually harassed.

35.     Defendant opened up an "investigation" into the incident, which dragged on for months. Defendant's HR department held multiple calls with Ms. Lawrence asking her what she wanted done as a result of her complaint – unfairly putting the burden on Ms. Lawrence to decide on a course of action when it is Defendant's responsibility to deal with employees who sexually harass their subordinates.

36.     Shortly after she complained, it was clear that Defendant's HR department had immediately told Mr. Ghosh and Ms. Chima that Ms. Lawrence had complained, and they began retaliating against her immediately.

37.     Broadly, Defendant's posture towards Ms. Lawrence's career advancement at the company changed dramatically. Before she complained, Defendant, including Mr. Ghosh and Ms. Chima, had encouraged her, and was training her for, a business development role. Immediately after she complained, they told her directly that she did not have the skills to do business development and that there were no opportunities for her in business development at PMC. This was not the case just a few weeks prior – i.e., before she was sexually harassed and before she complained.

38.     Furthermore, within days of Ms. Lawrence's complaint, Mr. Ghosh ceased his one-on-one interaction with Ms. Lawrence and required Ms. Chima to be copied on all correspondence between Ms. Lawrence himself.

39.     Importantly, Ms. Lawrence had never received a poor performance review before because her work was consistently excellent.

40.     However, within weeks of filing her complaint, Mr. Ghosh completed a performance review of Ms. Lawrence in which he gave her extensive unwarranted and unfounded

negative feedback. Mr. Ghosh gave Ms. Lawrence a negative performance review in retaliation for complaining about him.

41.     It is clear that the negative feedback was baseless because, as a matter of substance, the negative feedback criticized Ms. Lawrence's ability to perform business development duties, even though her current role is not in business development. That is, Defendant issued Ms. Lawrence a negative performance review based on standards and job duties and responsibilities that did not apply to Ms. Lawrence.

42.     Mr. Ghosh had issued this performance review specifically to punish Ms. Lawrence for complaining and to create a record for why Ms. Lawrence should not be promoted to a business development role and why, eventually, she should be fired.

43.     Ms. Chima also participated in Ms. Lawrence's negative performance. Prior to Ms. Lawrence's complaint, Ms. Chima had always given Ms. Lawrence positive feedback and stellar work performance evaluations. After the complaint, Ms. Chima, who was present during Mr. Ghosh's sexual harassment of Ms. Lawrence but did nothing to stop and did not report it, cooperated with Mr. Ghosh to fabricate a negative performance review.

44.     After collaborating with Mr. Ghosh on Ms. Lawrence's negative performance review, Defendant rewarded Ms. Chima by giving her a promotion from "Associate Vice President" to "Vice President" dispute Ms. Chima's flagrant violation of Defendant's sexual harassment policies which requires employees to report sexual harassment when they witness it, which Ms. Chima failed to do.

45.     When Ms. Lawrence asked about the previously discussed opportunity to move into a business development role, Mr. Ghosh and Ms. Chima told her that certain brand heads (with whom Ms. Lawrence primarily worked) had "concerns" about her advancing into a business

development role. When Ms. Lawrence asked what those "concerns" where, they could not articulate any, other than that Ms. Lawrence should be "less bossy" on email.

46.     This is a fabricated reason to prevent Ms. Lawrence's advancement in the company. Defendant clearly did not want someone they perceived as a troublemaker moving up in the company – i.e., someone that asserts their rights not to be sexually harassed at work and who complains about it.

47.     Eventually, in early 2024, Defendant forced Mr. Ghosh to "apologize" to Ms. Lawrence. During this call, Mr. Ghosh explained that any action of his that made Ms. Lawrence feel uncomfortable was due to "cultural differences." That is, Mr. Ghosh suggested, in his "apology" meeting, that his sexual harassment of Ms. Lawrence – commenting on her weight, touching her breasts, neck, and lower back, and forcing her to lay her head on his shoulder (among other things) – was a caused by the fact that Mr. Ghosh is an older Indian man. This "apology" was no apology at all. Defendant's position that Mr. Ghosh's sexual harassment of Ms. Lawrence is due to "cultural differences" reflects their complete indifference to Ms. Lawrence's experience with Mr. Ghosh.

48.     After Ms. Lawrence submitted her complaint to HR, Defendant re-organized Ms. Lawrence's team and Ms. Chima advised Ms. Lawrence that she now would report directly to her – instead of Mr. Ghosh. This, itself and alone, is an adverse employment action, as Ms. Lawrence used to report directly to the senior leader of the team, but as a result of her complaint she now reports to a lower-level employee.

49.     Incredibly, Ms. Chima, as Ms. Lawrence's direct supervisor, told Ms. Lawrence that because Ms. Lawrence complained, it messed everything up and "now we can't do team

dinners," insinuating that she did not agree with Ms. Lawrence's decision to report Mr. Ghosh's actions to HR.

50.     This statement alone is an unlawful retaliatory act as it would dissuade a reasonable person from making a complaint of sexual harassment.

51.     Further, Ms. Chima also told Ms. Lawrence that she was no longer allowed to go on domestic and international business trips. This makes no sense because Ms. Lawrence works on the international brands and works closely with many of Defendant's international partners. Before complaining, Ms. Lawrence routinely went on business trips and was never indicated that there was any plan to cease these trips.

52.     Ms. Chima further told Ms. Lawrence that she was emotionally upset and mad at Ms. Lawrence for going to HR and not confiding in Ms. Chima first.

53.     In January 2024, Ms. Lawrence complained to HR that her new supervisor, Ms. Chima, told her that she was upset with Ms. Lawrence because she had gone to HR to complain about Mr. Ghosh's behavior and had not come to Ms. Chima. Ms. Lawrence complained that as a result of her complaint, Defendant planned to change the developmental functions of her job, the team reporting structure, and thus, the entire structure of the team. That is, Ms. Lawrence complained that because of her initial complaint against Mr. Ghosh, Ms. Lawrence's job was fundamentally changed.

54.     In addition, in October 2023, prior to Ms. Lawrence's complaint, Ms. Chima told Ms. Lawrence that she should ask Defendant for a promotion – from "Associate Director" to "Director" – because she was excelling at her job.

55.     After Ms. Lawrence complained, Ms. Chima told her that she should not seek a promotion, because it was "not a good time," without further explanation.

56.     Defendant is in the process of pushing out Ms. Lawrence in retaliation for complaining about Mr. Ghosh's sexual harassment.

57.     After Ms. Lawrence complained, Defendant decided to hire another member on Ms. Lawrence's team and posted a job listing online. However, there is not enough work to support an additional team member.

58.     In fact, when Ms. Lawrence asked Ms. Chima about the decision to hire a new team member and what that team member would be responsible for, Ms. Chima told Ms. Lawrence that she would be responsible for the same things as Ms. Lawrence and her subordinate. When Ms. Lawrence responded that there was not enough work for three people, Ms. Chima simply changed the subject.

59.     Defendant is hiring a new employee with the aim of replacing Ms. Lawrence. This is retaliatory and an illegal employment action.

60.     Finally, since Ms. Lawrence's complaint, Ms. Chima and Mr. Ghosh have been building a fake paper trail against Ms. Lawrence to make it appear that she is not completing her job duties, when, in fact, she has been completing her work in the same satisfactory way she has always been.

61.     Mr. Ghosh's actions caused Ms. Lawrence to experience significant emotional distress. Ms. Lawrence has seen medical providers to deal with the anxiety, depression, and other physical, psychological and health effects that were caused by Mr. Ghosh's sexual harassment and Defendant's retaliation.

62.     Defendant's actions are unethical, discriminatory, retaliatory, and illegal.

63.     Ms. Lawrence brings this action to assert her statutory rights to be free from discrimination and retaliation in the workplace.

**FIRST CLAIM FOR RELIEF**
**New York State Human Rights Law ("NYSHRL")**
**N.Y. Exec. L. §§ 290 et seq. – Sex Discrimination**

64.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

65.     In violation of the NYSHRL, while working for Defendant Plaintiff was sexually harassed by her boss.

66.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

67.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past salary, bonuses, and equity opportunities.

68.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, lasting embarrassment, and humiliation.

69.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees and costs, pre/post judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**New York City Human Rights Law ("NYCHRL")**
**N.Y.C. Admin. Code § 8-107 et seq. – Sex Discrimination**

70.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

71.     In violation of the NYCHRL, while working for Defendant Plaintiff was sexually harassed by her boss.

72.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

73.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past salary, bonuses, and equity opportunities.

74.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, lasting embarrassment, and humiliation.

75.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, attorneys' fees and costs, pre/post judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**New York State Human Rights Law ("NYSHRL")**
**N.Y. Exec. L. §§ 290 et seq. – Retaliation**

76.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77.     In violation of the NYSHFL, Defendant intentionally retaliated against Plaintiff because she complained about being sexually harassed by her boss.

78.     Defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's rights.

79.     As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, and other financial loss, as well as suffering humiliation, embarrassment, emotional distress, and mental anguish.

80.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, lasting embarrassment, and humiliation.

81.    Plaintiff seeks all legal and equitable remedies available for violations of the NYSHRL including compensatory damages, liquidated damages, punitive damages, and emotional attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**New York City Human Rights Law ("NYCHRL")**
**N.Y.C. Admin. Code § 8-107 et seq. – Retaliation**

82.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

83.    In violation of the NYCHRL, Defendant intentionally retaliated against Plaintiff because she complained about being sexually harassed by her boss.

84.    Defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's rights.

85.    As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, and other financial loss, as well as suffering humiliation, embarrassment, emotional distress, and mental anguish.

86.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, lasting embarrassment, and humiliation.

87.     Plaintiff seeks all legal and equitable remedies available for violations of the NYCHRL including compensatory damages, liquidated damages, punitive damages, and emotional attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### New York Labor Law ("NYLL") § 740 – Retaliation

88.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

89.     In violation of the NYLL, Defendant intentionally retaliated against Plaintiff because she complained about her boss touching her body inappropriately and without her consent – an action that she reasonably believed violated a law, rule or regulation.

90.     Defendant's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's rights.

91.     As a result of Defendant's conduct as alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, and other financial loss, as well as suffering humiliation, embarrassment, emotional distress, and mental anguish.

92.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, lasting embarrassment, and humiliation.

93.     Plaintiff seeks all legal and equitable remedies available for violations of the NYLL including compensatory damages, liquidated damages, punitive damages, and emotional attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(A)    For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B)    For reasonable attorneys' fees, interest, and costs of suit;

(C)    For pre/post judgment interest;

(D)    For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York     Respectfully submitted,
     February   , 2024     JOSEPH & KIRSCHENBAUM LLP

By:   *s/Maimon Kirschenbaum*
     D. Maimon Kirschenbaum
     Michael DiGiulio
     32 Broadway, Suite 601
     New York, NY 10004
     Tel: (212) 688-5640
     Fax: (212) 688-2548

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.